IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

CONTRACT SECURITY FORCES, LLC,

     Plaintiff,

v.                                     Civil Action No. 1:17-cv-00814-LO-TCB

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

     Defendant.

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND IN SUPPORT OF ITS CROSS MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Philadelphia Indemnity Insurance Company ("PIIC"), by counsel, in

opposition to Plaintiff's Motion for Judgment on the Pleadings and in support of its Cross

Motion for Judgment on the Pleadings offers the following brief.

## ARGUMENT

### CSF's Motion for Judgment on the Pleadings Should be Treated as a Motion for Summary Judgment

Plaintiff Contract Security Forces, LLC ("CSF") has moved for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c), but this Court must consider its

Motion as one for summary judgment because CSF has attached and relied on materials outside

the four corners of the Complaint. Fed. Rule Civ. Proc. 12(d). Specifically, CSF attached as

Plaintiff Exhibit 2 and relies upon a Certificate of Insurance. CSF's suggestion that this

Certificate is a document "quoted, relied upon, or incorporated by reference in the complaint," is

inaccurate. In Motion footnote 3, CSF cites to paragraph 14 of the Complaint, which states in

full: "PIIC identified and acknowledged Apple, Inc., (sic) as an 'Additional Insured' under the

Policy, entitled to the coverages provided by the Policy." Neither this paragraph nor any other paragraph of the Complaint quotes, relies upon or incorporates the Certificate of Insurance in any way. Consequently, the Court should treat CSF's motion as one for summary judgment.

### CSF is Not Entitled to Judgment as a Matter of Law.

The standard of consideration for a motion for summary judgment is well settled. Summary judgment is appropriate only when there is no issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the facts must be viewed in a light most favorable to the non-moving party and the non-moving party "may not rest upon mere allegations or denials ... but must set forth specific facts showing that there is a genuine issue [of material fact]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Here, CSF is not entitled to judgment as a matter of law and the Motion cannot be decided in its favor because it inherently rests on disputed facts.

### Statement of Disputed Material Facts

CSF makes and relies upon numerous statements of fact in its Motion that are disputed or plainly not present in the record. Those disputes of fact preclude judgment in CSF's favor because they must be viewed in a light most favorable to PIIC in assessing whether PIIC has a duty to defend any insureds in the case of *Simmons and Green v. Apple, Inc.*, Case No. 17-cv-00617-RWT ("the Simmons/Green Complaint"). Those facts are as follows:

1. "[T]he chain of indemnity in CSF's contract to provide professional services to its contractee, Apple, Inc." (Motion, p. 10) – No contracts providing evidence of this

alleged "chain of indemnity" are identified or referred to in the Simmons/Green Complaint and none have been quoted in or attached to the Complaint in this case ("the DJ Complaint"). CSF's opposition to PIIC's Motion to Dismiss was based, in part, on the assertion that it had contractual obligations to Apple that could be passed on to PIIC under the policy terms. Without any such contract, the Court cannot determine what, if any, actual contractual obligations existed between CSF and Apple.

2.    "Simmons and Green were 'unlawfully detained' as a result of the actions of CSF's security agent." (Motion, p. 17) – There are no facts in the record to support this assertion. CSF is not mentioned or identified anywhere in the Simmons/Green Complaint. There are no such allegations in the DJ Complaint, nor are there any attachments to the DJ Complaint that support such fact. The truth of the assertion is a fact determinative of PIIC's contractual obligations to CSF and Apple because, as will be further addressed *infra*, Apple is only an additional insured in certain factual circumstances involving actions by CSF agents or employees.

3.    "Apple/CSF's actions . . . may have been intentional . . . however, the motivation may ultimately be found . . . to have been negligent . . ." (Motion, p. 21) – The Simmons/Green Complaint does not allege "negligent discrimination." Rather, it alleges only intentional acts by Apple and acts of discrimination, which are not covered by the Policy.

4.    The claims arise out of alleged "negligent hiring, training, retention and supervision." (Motion, p. 26) – Apple is an additional insured only in certain factual circumstances involving actions by CSF agents or employees. Consequently, any such negligence by

Apple, rather than CSF is not within the policy terms and is not covered. The Simmons/Green Complaint does not allege that CSF engaged in any "negligent hiring, training, retention and supervision."

These disputes of material fact preclude judgment for CSF because each must be evaluated in a light most favorable to PIIC.

## PIIC is Entitled to Judgment on the Pleadings.

In contrast, PIIC's Cross Motion for Judgment pursuant to Rule 12(c) must be granted because application of the "Eight Corners Rule" of assessment of an insurer's duty to defend confirms that that PIIC had no duty to defend Apple in the Simmons/Green Complaint. In determining an insurer's duty to defend, Virginia law requires the evaluation to be confined to the allegations of the complaint and the terms of the policy, referred to as the Eight Corners Rule. *Copp v. Nationwide Mutual Ins. Co.*, 279 Va. 675, 692 S.E.2d 220 (2010). "[O]nly the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured. This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." *AES Corp. v. Steadfast Ins. Co.*, 283 Va. 609, 616-17, 725 S.E.2d 532, 535 (2012)(citations omitted). "[I]t is the insured's burden to prove that the claim falls within the terms of the policy. *Furrow v. State Farm Mutual Auto. Ins. Co.,* 237 Va. 77, 80 (1989), *Maryland Casualty Co. v. Cole,* 156 Va. 707, 716 (1931).

**The Simmons/Green Complaint Does Not Allege Facts that Give Apple
the Status of an Additional Insured under the Policy.**

The scope of coverage owed to Apple as an Additional Insured is defined by

**Endorsement PI-GLD-SG**, which states as follows:

> **f. Blanket Additional Insureds by Contract** – Any person or organization for
> whom you are performing operations when you and such person or organization
> have agreed in writing in a contract or agreement that such person or organization be
> added as an additional insured on your policy. Such person or organization is an
> additional insured only with respect to liability for "bodily injury," "property
> damage" or "personal and advertising injury" caused, in whole or in part, by:
> (1) Your acts or omissions; or
> (2) The acts or omissions of those acting on your behalf;
> In the performance of your ongoing operations for the additional insured.

(Exh. A, p. 53.)[1] The Policy further defines "your" at the start of the Commercial General

Liability Coverage Form: "Throughout this policy the words "you" and "your" refer to the

Named Insured shown in the Declarations . . ." (Exh. A, p. 23.) CSF is the Named Insured in the

Policy declarations. (Exh. A, p. 4) Accordingly, Apple is an Additional Insured, entitled to

coverage under the policy, only for CSF's acts or omissions.

The Simmons/Green Complaint does not allege any acts by CSF or by someone acting on

CSF's behalf. CSF is not mentioned at all in that complaint. There is not even any reference to a

security guard or security officer (the service CSF provided to Apple). The Simmons/Green

Complaint merely alleges that all actions taken against Simmons and Green were by Apple's

employees. (See Pltf. Exh. 3, ¶ 10: "Apple store employees called 911 to report two suspicious

black men;" ¶ 11: "Apple Store and its employees profiled the Plaintiffs;" ¶ 14: "Defendant's

employees were the agents, servants, joint ventures, partners and/or co-conspirators of Defendant

Apple, Inc.;" ¶ 17: "Plaintiffs were subjected to constant stares and glares by Apple Store

employees;" ¶ 22: "As a direct and proximate cause of the Defendant and its employees' actions

---

[1] Although CSF attached the Policy as an exhibit to its Motion, PIIC does as well, with the pages
bates numbered for the court's ease of reference.

. . .") Because the Simmons/Green Complaint does not allege actions taken by CSF, its allegations do not bring Apple within the terms of **Endorsement PI-GLD-SG** and Apple is not an Additional Insured for the claims made by Simmons and Green. PIIC has no duty to defend Apple for those claims. Since CSF's claim in this case is derivative of an assertion that Apple was entitled to coverage under the Policy, CSF's claim for defense costs similarly fails.[2]

Because the Simmons/Green Complaint does not allege that the acts taken against the plaintiffs were done by CSF or any agent or employee of CSF, it does not allege facts that make Apple an Additional Insured. By the Eight Corners Rule, there is no allegation in the Simmons/Green Complaint that brings Apple within the scope of coverage afforded to it as a potential additional insured under the Policy terms and PIIC is entitled to judgment as a matter of law as to any duty to defend Apple.

---

[2] On page 18 of the Motion, CSF suggests that PIIC admitted that CSF was Apple's agent and admitted "the relationship of CSF and Apple." PIIC did not. On the contrary, in the letter denying coverage for the underlying case, PIIC expressly stated that the underlying case did not contain allegations that CSF acted against the plaintiffs but that the analysis would continue with that assumption so that all other potentially applicable policy terms could be examined. Under no circumstances can PIIC's statement in the letter be considered a waiver or estoppel that would create coverage for Apple and a duty to defend Apple that did not exist in the Policy. *Insurance Co. of North America v. Atlantic Nat. Ins. Co.*, 329 F.2d 769, 775 (4th Cir. 1964)(it is the general and quite well settled rule of law that the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained . . . The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom"); *accord*, *Norman v. Insurance Co. of North America*, 218 Va. 718, 728, 239 S.E.2d 902, 907–08 (1978); *Sharp v. Richmond Life Ins. Co.*, 212 Va. 229, 233, 183 S.E.2d 132, 135 (1971).

**<u>The Terms of the Policy Unambiguously Preclude Coverage</u>**

Even if the Simmons/Green Complaint did allege facts to make Apple an Additional Insured, the Policy does not provide coverage for the allegations made by Simmons and Green. [3]

**<u>Coverage A does not Generate a Duty to Defend Apple.</u>**

The **Commercial General Liability Coverage Form** (CG 00 01 12 07) ("CGL Form") provides insurance under Coverage A for liability because of bodily injury or property damage. (Exh. A, p. 23.) The Simmons/Green Complaint does not allege property damage. **Section V, Definitions** of the CGL Form defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Exh. A, p. 35.) That definition is modified, though, in the **General Liability Deluxe Endorsement: Security Services** (PI-GLD-SG), (beginning on Exh. A, p. 50) which contains several relevant modifications of definitions and provisions. That endorsement provides:

> **L. Bodily Injury – Mental Anguish**
>
> **Section V- Definitions**, Paragraph 3. is changed to read:
>
> "Bodily injury":
>
> a.  Means bodily injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these.

(Exh. A, p. 55) Although the Simmons/Green Complaint includes the suggestion that Simmons and Green experienced mental anguish, there is no allegation that the mental anguish resulted from bodily injury, sickness or disease. Consequently, Coverage A does not provide coverage to Apple for the allegations of the Complaint and does not require PIIC to defend Apple.

---

[3] As it did in the denial letter, PIIC will continue here to demonstrate how other parts of the Policy also preclude a duty to defend.

## **Coverage B does not Generate a Duty to Defend Apple.**

The CGL Form provides insurance under Coverage B for liability because of "personal and advertising injury." (Exh. A, p. 55.) An endorsement, **Definitions – Personal Injury and Advertising Injury** (PI-SG-007), (Exh. A, p. 66), modifies the definition of "personal injury" in relevant part as follows:

**A. Section V – Definitions** 14. Personal and advertising injury is deleted in its entirety and replaced by the following:

2. "Personal injury" means injury other than "bodily injury" arising out of one or more of the following offenses:
a. False arrest, detention, or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, by or on behalf of its owner, landlord, or lessor;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or
e. Oral or written publication of material that violates a person's right to privacy.

3. All references to "personal and advertising injury" are altered to read "personal injury" or "advertising injury".

Simmons and Green did not allege a claim or cause of action against Apple for any of the above offenses that are within the coverage for "personal injury" under Coverage B. Accordingly, PIIC has no duty to defend Apple under Coverage B.

Further, Coverage B contains an exclusion that applies to preclude coverage and a duty to defend the underlying case:

**2. Exclusions**
This insurance does not apply to:

**a. Knowing Violation of Rights of Another**
"Personal injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury".

8

(Exh. A, p. 28.) Simmons and Green unequivocally allege that Apple acted knowingly and intentionally to discriminate against them and to violate their civil rights, including "a pattern and practice of 'racial profiling'" that targeted the plaintiffs as "shoplifters" (Pltf. Exh. 3, ¶11); and "intentional and systematic racial discrimination" (Pltf. Exh. 3, ¶ 15). Contrary to CSF's suggestion on page 17 of its Motion, the gravamen of the Simmons/Green Complaint is not that they were "illegally detained" but that Apple discriminated against them on the basis of race. Indeed, five of the six causes of action are expressly claims of intentional racial discrimination and the sixth cause of action, which will be addressed further below, asserts that Apple's actions in training its employees resulted in "unlawful racial profiling," (Pltf. Exh. 3, ¶ 42), and "abusive tactics," (Pltf. Exh. 3, ¶ 43). The entire Simmons/Green Complaint alleges actions that knowingly violated their rights and that Apple knew such actions would inflict personal injury.

As Virginia state and federal courts have addressed on several occasions, the fact that the Simmons/Green Complaint sporadically uses the word "negligently" does not abrogate application of this exclusion. Instead, the Court must address the complaint as a whole to assess what the plaintiff is claiming. In one of the most thorough opinions on the issue, *AES Corp. v. Steadfast Ins. Co.*, 283 Va. 609, 725 S.E.2d 532 (2012), the Supreme Court of Virginia focused on the nature of accidental and intentional acts in determining that an insurer had no duty to defend a complaint. Although the specific inquiry in that case was application of the word "occurrence" in the policy, that inquiry inherently required examination of the distinction between accidental and intentional effects.

> We have held that an "accident" is commonly understood to mean "an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." . . . An accidental injury is one that "happen[s] by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous." We have held that "[a]n intentional act is neither an 'occurrence' nor an 'accident' and therefore is not

> covered by the standard policy." If a result is the natural or probable consequence of
> an insured's intentional act, it is not an accident.

*AES Supply*, 283 Va. 609, 617–18, 725 S.E.2d 532, 536 (citations omitted). Responding to the

assertion that a defense is required whenever a complaint uses the word "negligent" to describe

the defendant's actions, the court described that the focus, instead, must be on whether the

complaint alleges "that the insured subjectively intended or anticipated the result of its

intentional act or that objectively, the result was a natural or probable consequence of the

intentional act. Thus, resolution of the issue . . . turns on whether the Complaint can be construed

as alleging that [the plaintiff's] injuries, at least in the alternative, resulted from unforeseen

consequences that were not natural or probable consequences of [the insured's] deliberate act . .

." *Id.* at 618–19, 725 S.E.2d at 536. The insured highlighted that the complaint alleged that it

"knew *or should know* " that its actions would result in harm, those italicized words suggesting

that "at least in the alternative, that the consequences of [the insured's actions] . . . were

unintended" and therefore potentially covered. *Id.* at 619, 725 S.E.2d at 536–37.

      The Virginia Supreme Court disagreed, beginning with a review of prior rulings that

"allegations of negligence are not synonymous with allegations of an accident." *AES Corp.*, 283

Va. at 620, 725 S.E.2d at 37, *citing Nationwide Mut. Fire Ins. Co. v. Overstreet,* 568 F. Supp. 2d

638, 651–52 (E.D. Va. 2008)(mere use of the word negligence does not compel a court to find

that a claim was based on an "occurrence" under Virginia law); 16 Holmes, *Appleman on

Insurance 2d* § 116.4 (accident and negligence are not synonymous and not all negligent acts

support a claim of accident)."  It concluded that "[e]ven if [the insured was] negligent and did

not intend to cause the damage that occurred, the gravamen of [the plaintiff's] nuisance claim is

that the damages it sustained were the natural and probable consequences of [the insured's]

intentional emissions."  Id.  Finally, the Virginia Supreme Court noted that "[w]here the harmful

consequences of an act are alleged to have been not just possible, but the natural or probable consequences of an intentional act, choosing to perform the act deliberately, even if in ignorance of that fact, does not make the resulting injury an "accident" even when the complaint alleges that such action was negligent." Id. at 620–21, 725 S.E.2d at 537–38; *accord Overstreet,* 568 F. Supp. 2d at 652 (insurer had no duty to defend or indemnify complaint alleging intentional acts, notwithstanding allegations that such acts were grossly negligent); *Markel American Ins. Co. v. Staples*, 2010 WL 370304, at \*5 (E.D.Va. 2010)("[T]he mere presence of a negligence claim is insufficient to end-run an intentional acts exclusion. Instead, a reviewing court should examine the facts of the underlying complaint and the nature of the claim."); *Gordon v. Hartford Fire Insurance Co.,* 105 F. App'x 476, 483 (4th Cir. 2004)(the court should look at the "substance of the count" rather than to "vague references," to determine if the alleged negligence was "merely incidental" to the "clearly intended" acts).

Here, Simmons/Green's intermittent insertion of the word "negligently" does not alter that their complaint alleges that the natural and probable consequences of Apple's "policies, plans, customs, practices, actions or omissions" was to "ratify[] the unlawful conduct" of racial discrimination against them. (Pltf. Exh. 3, ¶ 13.) The Simmons/Green Complaint alleges as a whole that Apple by its means, methods, policies, intent, and direct actions engaged in actions that it knew would result in "personal injury" to Simmons and Green. Specifically, Simmons and Green allege that Apple engaged in its discriminatory practice with the direct intent and result that the two would be detained by the police. (Pltf. Exh. 3, ¶ 10.) Count Six alleges that Apple's training of its employees "failed to protect the public . . . from the resulting damage of discriminatory behavior," (Pltf. Exh. 3, ¶ 42), and that Apple knew that its employees engaged in discriminatory behavior, "abusive tactics" and racial profiling against the plaintiffs, (Pltf. Exh. 3,

11

¶ 43). Such allegations fall squarely within Exclusion 2 a. above and preclude PIIC having any

duty to defend Apple. Hence, there is no coverage for and no duty to defend Apple pursuant to

Coverage B.

### Coverage D does not Generate a Duty to Defend Apple.

CSF devotes substantial effort to making the case that "negligent discrimination" is a

"legally cognizable claim," and that "negligent or unintended discrimination provides a viable

theory of liability against CSF/Apple." (Motion, pp. 21-22.) CSF states that for the purposes of

assessing PIIC's duty to defend, "it is sufficient that negligent discrimination is alleged." This

argument fails for two reasons. First, the Simmons/Green Complaint does not allege negligent

discrimination in any paragraph.[4] Further, as described above, the Simmons/Green Complaint

cannot be read to negate its express allegations that Apple acted intentionally to racially

discriminate against Simmons and Green with the natural and probable result that Simmons and

Green would be injured.

Second, the discrimination claims are expressly excluded from coverage by the terms of

**Coverage D – Errors and Omissions Liability**, added to the Policy by **General Liability**

**Deluxe Endorsement: Security Services**, (Exh. A, p. 56), as follows:

> We will pay those sums that the insured becomes legally obligated to pay as
> "damages" sustained by a client, customer or patron of the insured proximately
> caused by negligent acts, errors or omissions committed by you in the actual
> rendering of professional services described in the Declarations. . . .  However, we
> will have no duty to defend the insured against any "suit" seeking such "damages" to
> which this insurance does not apply.

---

[4] Simmons and Green do not allege that they were the subject of a disparate impact of a "practice that is unjustifiable in race . . . neutral business terms." *Contreras v. City of Los Angeles*, 6565 F.2d 1267, 1276 (9th Cir. 1981). They expressly allege that Apple engaged in intentional disparate treatment by the "'racial profiling' and targeting of African American/Black customers at its Apple store locations," (Pltf. Exh. 3, ¶11), manifested at the beginning of their visit to the store by being "subjected to constant stares and glares by Apple store employees," (Pltf. Exh. 3, ¶17), before any transaction had even begun.

**Coverage D** thereby expands the Policy coverage to include damages other than "bodily injury" or "personal injury." There are, though, two applicable exclusions to **Coverage D**, as follows:

> This insurance does not apply to:
>
> (3) Intentional injury, nor injury arising out of a willful violation of a penal statute or ordinance, committed by or with the knowledge or consent of the insured; . . .
>
> (10) Any claim alleging, arising out of, resulting from, based upon or in consequence of, directly or indirectly, any employment practices or any discrimination against any person or entity on any basis; additionally, any actual or alleged violation of the Fair Labor Standards Act or any similar law or regulation applicable to the payment of wages or overtime.

As fully addressed above, the Simmons/Green Complaint unequivocally alleges that Apple's discriminatory actions were intentional, as its employees engaged in a "pattern and practice of racial profiling and targeting of African American customers" and engaged in "intentional() and systematic racial discrimination," excluded by Exclusion (3). Moreover, the allegations and all of the claims and causes of action indisputably arise out of and result from discrimination and discriminatory practices, which are unambiguously excluded from coverage by Exclusion (10). Accordingly, Coverage D does not give rise to a duty to defend.

CSF's last effort focuses on Count Six for "Negligent Hiring, Training, Retention and Supervision." This count does not trigger the Policy's coverage. First, as addressed above, the allegations state solely Apple's actions in failing to train and supervise its employees to refrain from discrimination and unlawful conduct. The claims do not allege any action by CSF in performance of its operations for Apple, required to make Apple an Additional Insured. Second, the count does not allege "bodily injury" (Coverage A) or "personal injury" (Coverage B) having resulted from the alleged failures. Third, the claims made in Count Six arise out of, result from, and are based upon, directly or indirectly, the racial discrimination to which Simmons and Green allege they were subjected. Consequently, the claim is barred by Coverage D's Exclusion (10).

## There is no Claim for or Evidence of Bad Faith

CSF raises in its Motion an assertion that PIIC has violated Virginia Code § 38.2-209. This part of the Motion must be dismissed forthwith because there is no allegation in CSF's DJ Complaint that states in any form that PIIC acted in bad faith in its determination that the claims in the Simmons/Green Complaint are not covered by the Policy.

CSF asserts that PIIC "had no rational basis for denying coverage to CSF and its contractee Apple, Inc." (Motion, p. 30.) On the contrary, PIIC's bases for the denial are clear. First, Apple never tendered its defense to PIIC. Second, as was raised in PIIC's Motion to Dismiss and will be renewed below, PIIC owes no duties to defend CSF because CSF has not been sued by any person. Third, as has been demonstrated above, PIIC does not have a duty to defend the Simmons/Green Complaint because it does not allege any cause of action that falls within the Policy's coverage.

In determining whether an insurer has failed to act in good faith, the court applies a reasonableness standard to the insurer's conduct. *Saint John's African Methodist Episcopal Church v. GuideOne Specialty Mutual Ins. Co.*, 902 F. Supp. 2d 783, 787 (E.D.Va. 2012). "A bad-faith analysis generally would require consideration of such questions as whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact." *Cuna Mutual Ins. Soc. v. Norman*, 237 Va. 33, 38, 375 S.E.2d 724, 727 (1989).

14

CSF has neither alleged nor provided evidence of any of these factors regarding PIIC's coverage determination and certainly is not entitled to judgment on the pleadings on such a claim.  *See*, *e.g.*, *Adolph Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, 614 F. Supp. 2d 648, 657 (E.D. Va. 2008)(bad faith is a question of fact and is therefore inappropriate for disposition through summary judgment); *Jeb Stuart Auction Services, LLC v. West American Ins. Co.*, 122 F. Supp. 3d 479, 486 (W.D. Va. 2015)(denying motion for summary judgment on bad faith where facts surrounding where in dispute).

### PIIC is Entitled to Judgment because Contract Security has no Valid Claim for Defense under the Insurance Policy.

As PIIC asserted in its Motion to Dismiss, there is no duty owed to CSF for the claims made in the Simmons/Green Complaint because CSF was not a party to that case and no part of the insurance contract requires PIIC to "defend" an insured that has not been sued or to pay on behalf of an insured amounts that the insured is not "legally obligated to pay."[5]

The Court's Opinion is based on the statement that "the contractual relationship between Apple and CSF is implicitly recognized under Section V(9)(f) of the Commercial General Liability Form as an 'Insured Contract,' plausibly suggesting that CSF's procedural steps in the Maryland case were precisely what Apple, CSF, and PIIC contemplated in formation of their interrelationship." The premise of this conclusion, resting on the definition of an "insured contract" is incorrect because that definition applies only to liability for claims of "bodily injury" or "property damage." The text of the definition the Court cites is:

**SECTION V – DEFINITIONS**

9. "Insured contract" means:

---

[5] PIIC acknowledges that the Court has ruled on this issue in its Order and Memorandum of September 29, 2017. PIIC respectfully asserts, though, that the issue warrants being revisited in the context of this effort by CSF to achieve judgment on the pleadings.

> f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "*bodily injury*" or "*property damage*" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Exh. A, p. 35, emphasis added.)  In the DJ Complaint and its pending Motion, though, CSF asserts that PIIC owes coverage for "personal injury" liability, not for either bodily injury or property damage, neither of which was claimed in the Simmons/Green Complaint. Consequently, the "insured contract" definition is simply in applicable.

Further, PIIC's "contemplate[ion]" of the fact that its Named Insured might enter into a contract with another entity, here Apple, which might under certain factual circumstances make that entity an Additional Insured, does not alone create a legal obligation to pay damages, required by both the Policy terms and the law.

The insuring agreement for **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** provides in relevant part as follows:

> **a.**  We will pay those sums that *the insured becomes legally obligated to pay as damages* because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against *any "suit" seeking those damages*.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(Exh. A, p. 28, emphasis added) The Policy is clear and unambiguous that PIIC's duty to defend "the insured" extends only to a "suit" seeking damages that the insured is *legally obligated to pay as damages . . . .*" Hence, the Policy states that PIIC will defend CSF in a suit against CSF seeking to make CSF "legally obligated to pay" damages for personal injury. There is not and never has been any such suit against CSF. PIIC cannot have a duty to defend a non-existent lawsuit.

Instead, CSF claims that PIIC is required to reimburse CSF for its fulfillment of an alleged contractual relationship with Apple. This Court has in two prior cases made a clear statement of law that a contractual obligation to another is not the equivalent of "legally obligated to pay" in the terms of an insurance contract. In *Electric Motor and Contracting Company, Inc. v. Travelers Indemnity Company of America*, 235 F. Supp. 3d 781(E.D.Va. 2017), the court "adopt[ed] the plain meaning of the phrase, which is that an insured becomes 'legally obligated to pay [a sum] as damages' when some claim, order, or adjudication has directed the insured to pay a sum, pursuant to a binding legal obligation, as compensation or remediation for a loss or injury." *Id.* at 789. The court further relied on the decision in *Builders Mutual Insurance Co. v. Dragas Management. Corp. ("Dragas III")*, 793 F. Supp. 2d 785, 796–97 (E.D. Va. 2011), vacated on other grounds, 497 Fed.Appx. 313 (4th Cir. 2012), for the point that "**a contractual duty to incur costs, without a coercive legal directive to pay those costs as damages, would not qualify**" as legally obligated to pay as damages. 235 F. Supp. 3d at 789-790 (emphasis supplied). Here, CSF has not alleged anything other than that "Apple tendered its defense" of the Simmons/Green Complaint to CSF pursuant to a contractual obligation.[6] (DJ Complaint ¶ 18.) There is not and never has been any allegation that CSF was subject to "a coercive legal directive" to pay those costs as damages to anyone. Consequently, PIIC does not owe any coverage, any duty to defend, or any other contractual obligations to CSF for the Simmons/Green Complaint. A party seeking coverage under an insurance policy must, after establishing that it is an insured, otherwise bring itself within the plain language of the insuring agreement.  CSF fails to do this and PIIC is entitled to judgment in its favor on the DJ Complaint.

---

[6] The DJ Complaint does not allege that CSF *actually* incurred costs to defend Apple.

## Conclusion

For the reasons stated above, Defendant Philadelphia Indemnity Insurance Company asserts that the Plaintiff's Motion for Judgment on the Pleadings should be denied. For the reasons further stated, Defendant's Cross Motion for Judgment on the Pleadings should be granted.

Respectfully submitted,

PHILADELPHIA INDEMNITY
INSURANCE COMPANY

By Counsel

COUNSEL:

*/s/ James W. Barkley*
James W. Barkley, Esq.
Virginia Bar Number 35778
Elisabeth L. Manuel, Esq.
Virginia Bar Number 41261
Attorneys for Defendant
Morin & Barkley LLP
455 Second Street SE, Suite 200
Charlottesville, VA 22902
Phone:  434-293-1200
Fax:  434-293-2135
jwbarkley@morinandbarkley.com
elmanuel@morinandbarkley.com


*/s/ Margaret Fonshell Ward*
Margaret Fonshell Ward
Admitted *Pro Hac Vice*
Attorneys for Defendant
Ward & Herzog, LLC
102 W. Pennsylvania Avenue, Suite 200
Baltimore, MD 21204
Phone:  410-296-1573
Fax:  410-296-1576
mward@wardherzog.com

## **Table of Citations**

*Adolph Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, 614 F. Supp. 2d 648, 657 (E.D. Va. 2008)

*AES Corp. v. Steadfast Ins. Co.*, 283 Va. 609, 616-17, 725 S.E.2d 532, 535 (2012)

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

*Builders Mutual Insurance Co. v. Dragas Management. Corp. ("Dragas III")*, 793 F. Supp. 2d 785, 796–97 (E.D. Va. 2011), vacated on other grounds, 497 Fed.Appx. 313 (4th Cir. 2012)

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)

*Contreras v. City of Los Angeles*, 6565 F.2d 1267, 1276 (9th Cir. 1981)

*Copp v. Nationwide Mutual Ins. Co.*, 279 Va. 675, 692 S.E.2d 220 (2010)

*Cuna Mutual Ins. Soc. v. Norman*, 237 Va. 33, 38, 375 S.E.2d 724, 727 (1989)

*Electric Motor and Contracting Company, Inc. v. Travelers Indemnity Company of America*, 235 F. Supp. 3d 781(E.D.Va. 2017)

*Furrow v. State Farm Mutual Auto. Ins. Co.,* 237 Va. 77, 80 (1989)

*Gordon v. Hartford Fire Insurance Co.,* 105 F. App'x 476, 483 (4th Cir.2004)

*Insurance Co. of North America v. Atlantic Nat. Ins. Co.*, 329 F.2d 769, 775 (4th Cir. 1964)

*Jeb Stuart Auction Services, LLC v. West American Ins. Co.*, 122 F. Supp. 3d 479, 486 (W.D. Va. 2015)

*Markel American Ins. Co. v. Staples*, 2010 WL 370304, at *5 (E.D.Va. 2010)

*Maryland Casualty Co. v. Cole,* 156 Va. 707, 716 (1931)

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)

*Nationwide Mut. Fire Ins. Co. v. Overstreet,* 568 F. Supp. 2d 638, 651–52 (E.D.Va. 2008)

*Norman v. Insurance Co. of North America*, 218 Va. 718, 728, 239 S.E.2d 902, 907–08 (1978)

*Saint John's African Methodist Episcopal Church v. GuideOne Specialty Mutual Ins. Co.*, 902 F. Supp. 2d 783, 787 (E.D.Va. 2012)

*Sharp v. Richmond Life Ins. Co.*, 212 Va. 229, 233, 183 S.E.2d 132, 135 (1971)

16 Holmes, *Appleman on Insurance 2d* § 116.4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of November, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:


James S. Kurz, Esquire
J. Scott Shannon, Esquire
Redmon, Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, VA  22314
*Attorneys for Plaintiff*



*/s/ Elisabeth L. Manuel*